UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| AUSTIN LAWYERS GUILD; CARL GOSSETT, DAVID GRASSBAUGH, MARK SAMPSON, and FRANCIS WILLIAMS, for themselves and those similarly situated; and the PRISON JUSTICE LEAGUE,<br>　　　　　　Plaintiffs<br>v.<br><br>SECURUS TECHNOLOGIES, INC; TRAVIS COUNTY SHERIFF'S OFFICE, and GREG HAMILTON, in his official capacity; TRAVIS COUNTY DISTRICT ATTORNEY'S OFFICE, and ROSEMARY LEHMBERG, in her official capacity; and TRAVIS COUNTY ATTORNEY'S OFFICE, and DAVID ESCAMILLA, in his official capacity.<br>　　　　　　Defendants. | Cause No. 1:14-cv-00366-LY |

**PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT**

Plaintiffs respectfully file this lawsuit to stop the Sheriff and Securus Technologies from illegally recording attorneys' confidential calls with their clients in the county jail then unlawfully disclosing those recordings to prosecutors, and to stop prosecutors from illegally using those recordings, and will show:

JURISDICTION AND VENUE

1. Jurisdiction is conferred on this Court by 28 U.S.C. §§1331, 1343.

2. Venue in this Court is proper because Defendants reside in this judicial district; and the relevant events occurred in Travis County, Texas. 28 U.S.C. §1391

PARTIES

3. Carl Gossett, David Grassbaugh, Mark Sampson, and Francis Williams are attorneys who routinely represent clients housed in the downtown Travis County Jail (TCJ) and

the Travis County Correctional Complex (TCCC) in Del Valle regarding criminal matters pending in local courts. They routinely speak with those clients remotely via telephone and videoconferencing services provided at TCJ and TCCC exclusively by Securus Technologies. There are 966 attorneys routinely practicing criminal defense in Austin. Virtually all are in the same position. Moreover, of the 10,896 other attorneys in Austin, many will ultimately represent one or more pretrial detainees in a criminal defense matter.

4. The Austin Lawyers Guild (ALG) is membership-based, incorporated non-profit organization, which includes a substantial number of Austin criminal defense attorneys. Its purpose, as set out in its bylaws, is to "promote the public interest, civil rights, and social justice." ALG's members face substantially the same risk of eavesdropping as the individual Plaintiffs and the larger defense community.

5. Similarly, the Prison Justice League (PJL) is also a membership-based, incorporated non-profit organization. Its members include people detained in TCCC. PJL's mission is to improve conditions of incarceration through "litigation, advocacy, and empowering [its] members." PJL's members at TCCC all face substantially the same risk that calls with their attorneys will be unlawfully monitored, recorded, and used against them.

6. Travis County Sheriff's Department and Greg Hamilton, the Sheriff, operate TCJ and TCCC and are responsible for the detainees held there. They are also responsible for all programing and services in the jail, including telephone and video communications, for which they have contracted with the private entity Securus Technologies.

7. Securus Technologies, Inc. is a private corporation, founded and headquartered in Dallas, Texas. It has contracts with prisons and jails across the nation, including in Travis County, to provide telephone and video conferencing services for detainees.

8. The Travis County Attorney's Office and David Escamilla, the County Attorney,

prosecute misdemeanors in Travis County. The Travis County District Attorney's Office and Rosemary Lehmberg, the District Attorney, prosecute felonies in Travis County.

STATEMENT OF FACTS

9. A person arrested in Austin or Travis County is typically brought to TCJ downtown to be booked. TCJ is run by the Sheriff's Department. In most cases, if the Sheriff's Department plans to hold that person for more than a short time, it soon transfers the individual to TCCC in Del Valle, Texas.

10. Attorneys routinely contact their clients in both TCJ and TCCC by phone or videoconference to discuss confidential matters. They do so with the understanding their conversations are private. Similarly, detainees understand remote conversations with their attorneys are confidential and not recorded.

11. TCJ and TCCC's phone and videoconferences services are provided by Securus Technologies. It charges families and others in the free world for the privilege of speaking with a detainee. It shares a large cut of those payments with Travis County, which adds up to significant profit for both entities.

12. During those calls, Securus Technologies records communications between detainees and the outside world, relying on a set of servers, electronic storage, cables, and software separate from what is used to simply connect the callers. The equipment it uses to intercept, record, and share detainees' calls neither facilitates those telephone calls, nor are the recordings a necessary incident of the calls.

13. Securus Technologies stores recordings in a computer server, to which it gives local law enforcement agencies – including the Sheriff's Department, the District Attorney's Office, and the County Attorney's Office —direct online access. They are able to review any recorded call at their leisure.

14. Recording detainees' calls is required by Securus Technologies' contract with Travis County, which states that in the course of administering detainee phone services:

- "[Securus Technologies] shall provide inmate call recording and tracking"

- The recording and tracking must allow the Sheriff "to obtain a report of all calls from inmates' phones to a specific destination and then obtain a recording of the contents of the calls if needed"

- "[Securus Technologies] shall provide a storage method for the contents of inmate calls made within the previous six (6) months that allows County staff to search the data and retrieve the contents immediately"

15. The Sheriff's Department tells the public it does not record attorney-client calls. For instance, its "Jail Information" webpage says an inmate's calls to his attorney "are free of charge and are not recorded."[1] Similarly, Securus Technologies website promises "[video] visits are secure and completely private for legal counsel."[2] As recently as August 8, 2013, Major Darren Long, the Sheriff's jail administrator, told defense attorneys: "They [calls between attorneys and clients] are not recorded or listened to by my staff. The only way that could happen is if there was court order for us to do so." Defendants similarly lead detainees to believe calls with their attorneys are confidential.

16. But in reality, Securus Technologies and the Sheriff's Department do record confidential attorney-client communications. They also disclose those recorded conversations to prosecutors in the Travis County and District Attorneys' Offices. There is no legitimate reason to record calls between detainees and their attorneys – the recordings do nothing to further the facilities' security or public safety.

---

[1] "Jail Information," Travis County Sheriff's Office, at https://www.tcsheriff.org/inmate-a-jail-info/jail-information

[2] "Legal Visits," http://apps.securustech.net/VideoVisitation/LegalVisits.asp

17. Prosecutors in both the Travis County and District Attorneys' Offices have procured recordings of confidential attorney-client communication from the Sheriff's Department and/or Securus Technologies and listened to them. Some prosecutors have disclosed copies of those records to defense attorneys among other discovery materials; some have used that knowledge to their tactical advantage without admitting they obtained or listened to the recordings.

18. Securus Technologies and the Sheriff's Department were aware early on they were operating a system that captured and recorded privileged conversations. Securus, in particular, has been aware of virtually identical complaints from other parts of the country where it provides services.

19. Attorneys and investigators with the County and District Attorneys' Offices, from top to bottom, have had direct access to the Securus Technologies' database of recorded attorney calls for years. Senior-level members of the prosecutors' offices were aware that confidential conversations were being recorded. Low-level prosecutors have given defense attorneys copies of recorded calls as discovery materials, which they knew contained the attorneys' privileged discussions with their clients.

20. Members of the Austin criminal defense bar contacted Defendants' policymakers in early 2013 with evidence their privileged phone calls with detainees clients were being recorded and passed to the hands of prosecutors. On information as belief, the Sheriff, County Attorney,[3] District Attorney, and management of Securus all became aware of the issue at that point, but they did nothing to fix it.

---

[3] On information and belief, the County Commissioners' Court delegates policymaking authority over legal matters to the County Attorney's Office

21. They were alerted again in late 2013 when members of the criminal defense bar conferred with Travis County and District Court judges, who in turn directly contacted the District and County Attorneys. On information and believe, this sparked another round of discussion among Defendants' policymakers. But again, nothing was done.

22. The Travis County Commissioners Court was alerted to the matter on January 14, 2014, when they were told at an open meeting that attorneys' privileged calls with clients in the jail were being recorded and shared with prosecutors. The Commissioners were simultaneously cc'd on a spoliation letter to Securus, regarding the matters at issue here.

23. Although defense attorneys in Austin have discerned Defendants' practices and confronted them, Defendants appear to have no intention of ceasing their unlawful, unconstitutional eavesdropping and invasion of attorney-client communication. Detainees are all in substantial risk of having their attorney calls monitored, recorded, and used against them to prejudice their criminal cases. Similarly, both detainees and their attorneys faced substantial risk defendants will continue to violate their rights under the Federal and Texas Wiretap Acts.

24. Further, even if a defense attorney suspected his calls with detainees were being monitored, the detainee's Sixth Amendment rights would still be in serious jeopardy, because the attorney would be left with the Hobson's choice of using an insecure phone line or devoting significant time to visiting the detainee in person.

25. The Sheriff's Department implemented a policy on June 1, 2013, which prevents attorneys from sending non-attorney staff to visit inmates – as of that date, only attorneys, private investigators, and polygraph operators are permitted to have legal visits with Travis County detainees. There was no legitimate security concern to justify the policy change.

26. Exclusively visiting detainees in person requires an excessive investment of time, which interferes with the routine consultation that is necessary for the attorneys to represent

6

those detainees. Criminal defense attorneys must frequently consult with their clients. As an investigation proceeds, they must confer about various case details to inform their investigation, motion practice, and trial strategy. Traveling to the jail, moving through security, waiting for shift change, waiting for lockdowns, waiting for jail staff to find and bring an inmate to the visitation area, then waiting for a client to appear in the visitation room all take time – frequently, a significant amount of time. A call that could have been conducted in ten minutes may require a three-hour round trip – significantly lengthening the time required to handle the case, with the real chance of diminishing the attorney's effectiveness by distracting from the cases' other needs.

27. Further, any delays in communication between attorney and client that result from relying on visits instead of phone calls make it more likely detainees will be unable to protect interests that are often compromised in the short window of time between arrest and the opportunity to consult with an attorney.

28. First, a person who was recently arrested and hoping to be released on a personal recognizance bond needs an attorney's help, which means using the phone. He could easily share compromising privileged information while trying to contact an attorney, without suspecting the call is monitored. Further, any unrepresented detainee trying to hire an attorney could easily disclose prejudicial information before suspecting the risk.

29. Second, detainees will also risk irreparable injury if Defendants' practices force them to wait longer for legal advice. For instance, initial pleas – even for low-level charges – can have significant ramifications for an arrestee's immigration status. Legal permanent residents and visa-holders need immediate access to an attorney before the initial magistration following arrest. Even an undocumented arrestee could be eligible for relief from deportation through the Violence Against Women Act (VAWA) as a victim of domestic violence; for a U-Visa, as a

victim of other crimes; or for relief through the Deferred Action for Childhood Arrivals (DACA) program; but then become ineligible with an ill-advised opening plea, even for a very minor charge like "possession of drug paraphernalia," a seemingly-innocuous fine-only Class C misdemeanor. The law does not require a magistrate provide an attorney to a defendant before accepting a guilty plea for a Class C misdemeanor. Once the harm is done, it can be virtually impossible to repair.

30. Similarly, if a person arrested on charges of "driving while intoxicated" (DWI) is delayed from speaking with an attorney, he could miss the opportunity to exercise an important statutory right: the Texas Transportation Code §724.109 allows a person charged with DWI to request a separate blood sample from their own health care provider, if they make the request within two hours of being arrested. Every minute that passes makes it less likely the detainee will learn about that opportunity in time to exercise it.

31. Meanwhile, attorneys' incomes are reduced if they are forced to rely exclusively on visitation rather than the phone. These attorneys are either changing clients a flat fee, meaning an increased time commitment for each case cuts into their income; or they are charging an hourly fee, and fewer potential clients will be able to afford the cost of representation. Either way, it reduces attorneys' income. Appointed attorneys are especially harmed, because they do not receive hourly compensation. They are paid a few hundred dollars for a plea or a small amount more if the case goes to a trial. They are not compensated for time spent waiting for visits at TCJ or TCCC.

## CAUSES OF ACTION

A. Federal Wiretap Act (18 U.S.C. § 2510, *et seq*)

32. The Federal Wiretap Act broadly prohibits intercepting, disclosing, or using the contents of any wire, oral, or electronic communication.

33. Defendants have violated (and continue to violate) both attorneys' and detainees' rights under the Federal Wiretap Act. The individual Plaintiffs, the members of the Austin Lawyers Guild and members of the Prison Justice League are directly affected.

34. Securus Technologies and the Sheriff's Department have acted (and continue to act) in concert to intercept confidential communications between plaintiff attorneys and detainees, and to disclose those confidential communications to local prosecutors, in violation of the Act.

35. The Travis County and District Attorneys have used (and are using) those intercepted communications in violation of the Act.

B. Texas Wiretap Act (Tex. Civ. Prac. & Rem. Code § 123.001, *et seq*)

36. Each Defendant is violating the Texas Wiretap Act when it:

- "intercepts, attempts to intercept, or employs or obtains another to intercept or attempt to intercept the communication;"
- "uses or divulges information that he knows or reasonably should know was obtained by interception of the communication;" or
- "as… a common communication common carrier, either personally or through an agent or employee, aids or knowingly permits interception or attempted interception of the communication."

Tex. Civ. Prac. & Rem. Code § 123.002 (a).

37. Defendants have violated (and continue to violate) Plaintiff attorneys and detainees' rights under the Texas Wiretap Act. The individual Plaintiffs and the members of the Austin Lawyers Guild and the Prison Justice League are directly affected.

C. First, Fourth, Fifth, and Sixth Amendments to the United States Constitution

38. The Fourth Amendment of the U.S. Constitution prohibits unreasonable searches. Defendants seriously threaten the Fourth Amendment rights of Plaintiff attorneys and the members of the Austin Lawyers Guild, who have a reasonable expectation of privacy when they make calls, and members of the Prison Justice League, who have a reasonable expectation of

9

privacy when making attorney calls.

39.     The Sixth Amendment entitles criminal defendants to effective assistance of counsel, which includes confidential and timely attorney-client communication. Similarly, the First, Fifth, and Fourteenth Amendments protect a detainee's right to access the courts, which is violated when government officials infringe on confidential and timely attorney-client communication. The Prison Justice League's members include detainees whose face substantial risk their rights will be violated.

## CLASS ALLEGATIONS

40.     Pursuant to Federal Rule of Civil Procedure 23(a) and 23(b), Plaintiffs bring this action on behalf of themselves and a class of similarly situated persons, defined as attorneys practicing criminal defense in Austin or Travis County. The Class seeks certification of claims for declaratory and injunctive relief.

41.     <u>Numerosity</u>: The Class is so numerous it would impractical to join every member. Austin has roughly 966 attorneys who routinely practice criminal defense, and 10,896 attorneys overall. The identity of Class members can be identified through public records and public notice. Class members may be informed of the pendency of this action by public notice, with postings in courtrooms, with the assistance of the local bar association, and by creating an automated message for attorneys calling clients in TCJ and TCCC.

42.     <u>Commonality</u>: The Class has a well-defined community of interest in the questions of law and fact in this matter – including the recording/use of their confidential communications, the practice's unlawfulness, and the necessity for declaratory and injunctive relief.

43.     <u>Typicality</u>: The individual Plaintiffs' claims are typical of Class members' claims, because Plaintiffs are individual members of the larger community of local criminal defense attorneys with clients in the TCJ and TCCC, who have similar practices and operate under

similar constraints. Defendants' posture is the same toward every Austin attorney who represents detainees. Together, the class members all suffer unreasonable risk of harm warranting injunctive and declaratory relief

44. <u>Adequacy</u>: Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the Class members they seek to represent. Plaintiffs will fairly and adequately protect the interest of the members of the Class; they intend to prosecute this action vigorously.

45. This suit may also be maintained as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2) because Plaintiffs and the Class seek declaratory and injunctive relief. Defendants have acted on grounds generally applicable to Plaintiffs and the Class as a whole, thereby making declaratory and/or injunctive relief proper.

## DECLARATORY JUDGMENT

46. Defendants' unlawful actions are an ongoing threat to Plaintiffs' rights under state and federal law, and the U.S. Constitution.

47. "[A]ny person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of" the Federal Wiretap Act is entitled to seek declaratory and/or injunctive relief. 18 U.S.C. § 2520 (b)(1).

48. A person whose constitutional rights are violated has standing to seek declaratory relief under 28 U.S.C. § 2201.

## INJUNCTIVE RELIEF

49. Defendants' unlawful actions are an ongoing threat to Plaintiffs' rights under state and federal law, and the U.S. Constitution.

50. "[A]ny person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of" the Federal Wiretap Act is entitled to seek

declaratory and/or injunctive relief. 18 U.S.C. § 2520 (b)(1).

51. "A person who establishes a cause of action under [the Texas Wiretap Act] is entitled to… an injunction prohibiting a further interception, attempted interception, or divulgence or use of information obtained by an interception." Tex. Civ. Prac. & Rem. Code §123.004 (1).

## ATTORNEYS' FEES AND COSTS

52. Plaintiffs respectfully request they be awarded their attorney's fees and litigation costs.

53. "[A]ny person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of" the Federal Wiretap Act is entitled to seek "reasonable attorney's fee and other litigation costs reasonably incurred." 18 U.S.C. §2520(b)(3).

54. A person who "establishes a cause of action under the [Texas Wiretap Act] is entitled to… reasonable attorney's fees and costs." Tex. Civ. Prac. & Rem. Code § 123.004 (5).

55. Further, under 42 U.S.C. § 1988, a party who prevails in suit filed under 42 U.S.C. 1983 may be awarded reasonable attorneys' fees.

## PRAYER FOR RELIEF

THEREFORE, Plaintiffs respectfully request this Court grant the following relief:

A. Issue declaratory relief stating Defendants' practice of recording, disclosing, and using confidential attorney-client communications is unlawful;

B. Enjoin Defendants from recording, disclosing, and using confidential attorney-client communications;

C. Order Defendants to destroy all existing recordings of unlawfully-recorded attorney-client communications;

D. Award reasonable attorneys' fees, litigation expenses, and court costs; and

E. Grant all other and additional relief to which Plaintiffs may be entitled, at law or in equity.

DATED: July 21, 2014

        Respectfully submitted,

        /s/ Brian McGiverin
        Brian McGiverin
        Texas Bar No. 24067760
        brian@texascivilrightsproject.org

        Wayne Krause Yang
        State Bar No. 24032644
        James C. Harrington
        Texas Bar No. 09048500

        TEXAS CIVIL RIGHTS PROJECT
        1405 Montopolis Dr
        Austin, Texas 78741
        Tel. (512) 474-5073
        Fax (512) 474-0726

        Attorneys for the Individuals, the Austin Lawyers Guild, and the Prison Justice League

        /s/ George C. Lobb
        George C. Lobb
        Texas Bar No. 24042928

        Law Office of George C. Lobb
        1108 Lavaca Street, #110-242
        Austin, TX 78701
        Tel. (512) 215-6011
        Fax. (512) 425-0877

        Attorney for the Individuals and the Class

## CERTIFICATE OF SERVICE

       I certify that a true and correct copy of the foregoing has been served on all counsel of record who have appeared in this matter through the Electronic Case Files System of the Western District of Texas.

        /s/ Brian McGiverin
        Brian McGiverin