IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| AUSTIN LAWYERS GUILD, et al., | § § § | |
| Plaintiffs, | § § | |
| V. | § § | Civil No. 1:14-CV-366-LY |
| SECURUS TECHNOLOGIES, INC., et al., | § § § | |
| Defendants. | § § | |

## REPLY BRIEF IN SUPPORT OF DEFENDANT SECURUS TECHNOLOGIES, INC.'S RENEWED MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendant Securus Technologies, Inc. ("Securus" or "Company") by and through its undersigned counsel, files this Reply Brief in Support of its Renewed Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6), FED. R. CIV. P., and respectfully shows the Court as follows:

### PRELIMINARY STATEMENT

Plaintiffs' response to Securus' Renewed Motion to Dismiss is littered with misstatements, speculation, and misleading half-truths. The Court is not obliged to assume the truth of such allegations when they are not supported by well-pleaded facts. One illustration is Plaintiffs' allegation that Securus and the Travis County Defendants contracted for the "explicit purpose" of recording inmate calls with their attorneys. *See* Dkt. 34 at 28 & n.18. Not only is this allegation unsupported by any facts, it is directly contrary to the terms of the contract which Plaintiffs have had in their possession for quite some time. Plaintiffs quote three provisions from the contract (*see* Dkt. 34 at 23), but they conspicuously omit one key provision from the same paragraph relating to recording inmate calls:

029240.0129\4827-4638-0318.2.

> [Securus] shall record at its own expense all inmate telephone calls, *except those to numbers labeled as "Private" by the [Secure Call Platform] system based on instructions by County.*[1]

Hence, the central premise for Plaintiffs' claims in this lawsuit—that Defendants contractually agreed to engage in the routine, surreptitious recording of attorney calls—is demonstrably and blatantly false. The Court should not condone Plaintiffs' deceitful tactics to avoid dismissal of this case.

As demonstrated below and in the Renewed Motion to Dismiss, Plaintiffs' claims against Securus should be dismissed.  Securus is not liable for violations of the Federal or Texas Wiretap Act because its recording of inmate calls falls squarely within the plain language of the ordinary course of business exception, the law enforcement exception, and/or the common carrier defense. In addition, Plaintiffs' claims for violations of the U.S. Constitution should be dismissed because (1) they lack standing to assert these claims; (2) Securus was not acting under color of state law under Section 1983; and (3) Plaintiffs' allegations fail to show a plausible violation. Finally, Plaintiffs are not entitled to declaratory or injunctive relief, absent an actionable claim against Securus.  Accordingly, Securus respectfully urges the Court to grant its Renewed Motion to Dismiss.

## ARGUMENT AND AUTHORITIES

A.    **Plaintiffs' Claims Under the Federal and Texas Wiretap Acts Should Be Dismissed**

Plaintiffs first contend that Securus cannot rely on the ordinary course of business exception, the law enforcement exception, or the common carrier defense in the Federal and Texas Wiretap

---

[1] This excerpt from the contract is attached to this Reply as Exhibit B (*see* ¶ 5.5, emphasis added).  Plaintiffs cannot contest its authenticity because they refer to the same provisions in the Amended Complaint and their response to the Renewed Motion to Dismiss.  Moreover, the Court may consider this excerpt as part of the pleadings for purposes of dismissal under Rule 12(b)(6).  The Fifth Circuit has consistently held that "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *See e.g., Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).

029240.0129\4827-4638-0318.2.

Acts.  They claim that the ordinary course of business and the law enforcement exceptions do not apply because (1) the equipment used to record inmate calls is not the "normal" kind of equipment envisioned under the statute, (2) the recording of attorney calls is inconsistent with the Defendants' stated policies, and (3) the exceptions do not apply to "covert" recordings without notice.   Dkt. 34 at 4-8.  Plaintiffs also claim that the common carrier defense does not apply because recording calls is not a necessary part of Securus' business or necessary to protect its rights or property.  *Id.* at 8-10.

1. Securus is protected from liability under the ordinary course of business and law
   enforcement exceptions.

As discussed in the Renewed Motion to Dismiss, the Federal and Texas Wiretap Acts both contain exemptions for the interception of phone calls in the ordinary course of business or for law enforcement purposes.  *See* Dkt. 29 at 16-17.  Contrary to Plaintiffs' argument, these statutory exemptions do not depend on the use of "normal" telephone equipment.  Rather, the federal statute excludes from the definition of an electronic, mechanical, or other device "any telephone or telegraph instrument, equipment or facility, or any component thereof."  *See* 18 U.S.C. § 2510(5)(a) (emphasis added).  These are broad terms evidencing no intended limitations.  Thus, Plaintiffs' argument that the exceptions only apply when "normal" equipment is used is not supported by the plain language of the statute.

In addition, if the exceptions required the use of only "normal" telephone equipment, then every recorded inmate call at every penal facility would be a *per se* violation of the statute—even a prisoner's threats to a judge, a lawyer, or a potential witness in a criminal prosecution.  Plaintiffs have not alleged that the recording of all inmate calls violates the statute.  Indeed, such a position is contrary to the numerous court decisions upholding the legality of monitoring or recording telephone calls by inmates in the prison setting.  *See e.g.*, *United States v. Van Poyck*, 77 F.3d 285, 291-92 (9th Cir. 1996) (upholding admissibility of phone calls based on law enforcement exception in Federal Wiretap Act and also holding that "any expectation of privacy in outbound calls from

3

prison is not objectively reasonable and that the Fourth Amendment is therefore not triggered by the routine taping of such calls."); *United States v. Bagguley*, 838 F.2d 468, 1987 U.S. App. LEXIS 18712 at *13-14 (4th Cir. 1987) (upholding admissibility of phone calls based on law enforcement exception in Federal Wiretap Act); *United States v. Hammond*, 286 F.3d 189 (4th Cir. 2002) (same); *United States v. Workman*, 80 F.3d 688, 693 (2nd Cir. 1996) ("Under certain circumstances, prisoners are deemed to have given consent for purposes of Title III [of the Federal Wiretap Act] to the interception of their calls on institutional telephones."); *United States v. Ganghi*, 57 F. App'x 809, 814 (10th Cir. 2003).

Plaintiffs also argue that recording attorney calls is not in the ordinary course of business or for legitimate law enforcement purposes because it is done covertly, without notice, and is contrary to the Defendants' stated policy.[2] Dkt. 34 at 5-7. These arguments, however, have been rejected by the Fifth Circuit and other courts under factually identical circumstances. In *Briggs v. American Air Filter Co., Inc.*, the Fifth Circuit held that calls may be monitored in the "ordinary course of business" under the Federal Wiretap Act, even when there is no notice or consent of the parties. 630 F.2d 414, 419-20 (5th Cir. 1980). In construing the exception, the Court noted that "there must be some circumstances under which non-consensual interception falls within the 'ordinary course of business.'" *Id.* at 419.

In *Randolph v. State of Nevada*, the plaintiff brought a federal wiretap claim against a private company which contracted with the Nevada Department of Corrections to record all inmate telephone calls, other than approved calls between an inmate and his attorney. 2013 U.S. Dist. LEXIS 154935 at *16 (D. Nev. 2013). Despite the plaintiff's allegation that some of the calls to his attorney were "repeatedly, surreptitiously, and intentionally monitored and recorded," the District

---

[2] Securus disputes the allegation that calls from inmates to their lawyers are improperly recorded at all, much less that they are recorded covertly and without notice, inasmuch as when the recording function is not disabled, the call system alerts the caller and the recipient that the call may be monitored and/or recorded. Nonetheless, Securus acknowledges that the Court may deem this allegation to be true for purposes of determining the Motions to Dismiss.

4

Court dismissed the wiretap claim, concluding that the contractor was acting in the ordinary course of its duties under the contract and, therefore, qualified for the law enforcement exception.  *Id*. Even with a policy of not recording approved calls in place, the Court held that the law enforcement exception applied.  Likewise, a similar policy in this case of not recording attorney calls does not exclude Securus from the protection of the ordinary course of business and law enforcement exceptions in the statute.

       2.   <u>Securus is also protected by the common carrier defense.</u>

Plaintiffs also assert that Securus cannot rely on the common carrier defense because recording attorney calls is not necessary to its service or for the protection of its rights or property. Dkt. 34 at 8-9.  The common carrier defense in the Texas Wiretap Act is virtually identical to the defense under Section 2511(2)(a)(i) of the Federal Wiretap Act, which Securus also discussed in the Renewed Motion to Dismiss.  *See* Dkt. 29 at 17-18.  Section 2511(2)(a)(i) provides in relevant part:

> It shall not be unlawful…for an…officer, employee, or agent of a provider of wire or electronic communication service, whose facilities are used in the transmission of a wire or electronic communication, to intercept, disclose, or use that communication in the normal course of his employment while engaged in any activity which is a necessary incident to the rendition of his service…

18 U.S.C. § 2511(2)(a)(i). Plaintiffs cannot dispute that Securus is a provider of wire communication services, that its facilities were used in the transmission of wire communications, and that the interception of inmate telephone calls was in the normal course of its engagement and necessarily incident to its services under the contract with Travis County.

Plaintiffs rely on *United States v. Savage* which analyzed Section 2511(2)(a)(i) and held that a switchboard operator's initial interception of a call involving possible criminal conduct was legal under the plain language of the statute.  564 F.2d 728, 731-32 (5th Cir. 1977).  While Securus may not function as a traditional switchboard operator under its contract with Travis County, the recording of inmate calls unmistakably falls within the plain language of the common carrier

defense.  Accordingly, Plaintiffs' claims against Securus under the Federal and Texas Wiretap Acts should be dismissed.

**B.      Plaintiffs' Claims for Violations of the U.S. Constitution Should Be Dismissed**

In their response, Plaintiffs argue that their constitutional claims spring from various sources, including the Sixth Amendment right to counsel and their right to "access to the courts" under the First, Fifth, and/or Fourteenth Amendments.  Dkt. 34 at 10-13.  But these claims have no merit.

Plaintiffs fail to articulate how their claim for access to the courts is grounded in the First Amendment.  Similarly, in *Jaramillo v. Bexar County, Texas*, a case cited by both Plaintiffs and Securus, the District Court held that restrictions on an inmate's access to his attorney (i.e., limiting him to one phone call per week) implicated the Fourteenth Amendment's Due Process Clause. 2011 U.S. Dist. LEXIS 46693 at *4-5 (W.D. Tex. May 2, 2011).  As a result, the alleged constitutional deprivation must rise to the level of impermissible punishment.  *Id.*  Here, Plaintiffs have not even alleged, much less shown, that Defendants' actions constitute punishment under the Fourteenth Amendment.

In regards to Plaintiffs' claims for access to the courts under the Fifth Amendment and their right to counsel under the Sixth Amendment, courts have noted that such claims are interrelated, but they are distinct claims governed by different standards.  *See United States v. Neff*, 2013 U.S. Dist. LEXIS 629 at *14 (N.D. Tex. Jan. 3, 2013) (citing *Benjamin v. Fraser*, 264 F.3d 175, 184 (2nd Cir. 2001); *Groenow v. Williams*, 2014 U.S. Dist. LEXIS 32149 at *18 (S.D.N.Y. March 11, 2014) (citing *Benjamin*, 264 F.3d at 186).  These courts also suggest that the nature of the claim depends on the relief pursued by the inmate.  That is, if the prisoner is seeking access to an attorney to attack his conviction and sentence or conditions of confinement, the claim is better characterized as a claim for "access to the courts."  *Id.*  If, on the other hand, the prisoner complains about access to an

029240.0129\4827-4638-0318.2.

attorney for the defense of an ongoing prosecution, the Sixth Amendment right to counsel is at issue. *Id.* Because Plaintiffs have refused to identify any inmates or provide any specific facts about why they want access to counsel, it is unclear what rights they are seeking to vindicate. Nevertheless, Plaintiffs cannot state a plausible claim for violations of the Sixth Amendment or for access to the courts under the Fifth Amendment.

In *Groenow v. Williams*, another identical case involving an inmate who was allegedly "forced to call his attorney on a recording and monitoring system, violating his right to confidential legal calls," the District Court dismissed the plaintiff's claims for violations of the Sixth Amendment and his right to access the courts. The Court held that a plaintiff's Sixth Amendment right to counsel is not unreasonably burdened where he has alternate means of communication with counsel, such as by mail or in-person visits. *Groenow*, 2014 U.S. Dist. LEXIS 32149 at *20-21. Hence, because the plaintiff failed to allege that he was denied <u>all</u> alternative methods of communicating with his counsel, he failed to allege a Sixth Amendment violation. *Id.* at 21-22.

The District Court also dismissed the plaintiff's access to the courts claim for the same reason. *Id.* at 23 ("As with right-to-counsel claims, a claim alleging that prison officials violated a prisoner's right of access to the courts requires that a prisoner be prohibited from communicating with his attorney by all available means."). In addition, the Court found that the plaintiff failed to show that he was unfairly prejudiced by the alleged deprivation of his right to access the courts.[3] *Id.* at 24 (citing *Lewis v. Casey*, 518 U.S. 343, 353 (1996)).

In this case, the Plaintiffs' Amended Complaint suffers from the same fatal defects. Plaintiffs admit they have other available methods of communicating with their alleged clients,

---

[3] To show prejudice, the plaintiff was required to allege an "actual injury": (1) a valid underlying cause of action separate from the right of access claim; and (2) frustration or hindrance of the litigation caused by the public official. *Id.* (citing *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)).

029240.0129\4827-4638-0318.2.

either in-person or through the mail.  In addition, they have failed to show any prejudice caused by an alleged deprivation of their right to access the courts.

Furthermore, as noted in the Renewed Motion to Dismiss, the Fifth Circuit has not extended the right of access to the courts beyond an inmate's ability to prepare a legal document.  *See* Dkt. 29 at 13-14 (citing *Brewer v. Wilkinson*, 3 F.3d 816, 821 (5th Cir. 1993).  Plaintiffs describe this statement in *Brewer* as "misleading" ostensibly because, according to the Plaintiffs, the Court must have intended this right to be as broad as possible, to include "inmates' effective communication with their attorneys."  *See* Dkt. 34 at 12 n.8.  However, subsequent Fifth Circuit decisions have rejected this view.  *See e.g., Terry v. Hubert*, 609 F.3d 757, 760-62 (5th Cir. 2010) (citing *Brewer* and dismissing prisoner's claim for denial of access to the courts based on allegation that he was denied access to counsel); *Widner v. Aguilar*, 2010 U.S. App. LEXIS 22286 at *5 (5th Cir. Oct. 27, 2010) (citing *Brewer* and rejecting claim for denial of access to the courts arising from confiscating prisoner's mail).  Moreover, the Court in *Brewer* cited *Wolff v. McDonnell*, where the Supreme Court explicitly states that the right of access to the courts has not been extended further than protecting an inmate's ability "to prepare a petition or complaint."  *See Brewer*, 3 F.3d 816, 821 (5th Cir. 1993) (citing *Wolff*, 418 U.S. 539, 576 (1974)).  Again, Plaintiffs make no allegation that anyone's right to prepare and/or file legal pleadings has been unconstitutionally deprived. Therefore, Plaintiffs have failed to state plausible claims for violations of the Constitution.

**C.      Plaintiffs Are Not Entitled to Injunctive or Declaratory Relief**

As demonstrated in the Renewed Motion to Dismiss, Plaintiffs' claims for declaratory and injunctive relief are not stand-alone claims.  Declaratory or injunctive relief is unavailable absent a justiciable underlying cause of action.  *See* Dkt. 29 at 18-19; *see also Thelen v. Travis County, et al.*, A-14-CV-219 at *8-9 (W.D. Tex. Sept. 19, 2014) (Lane, J.) (citations omitted).  Plaintiffs' response offers no other grounds or bases for obtaining declaratory or injunctive relief.  In fact,

Plaintiffs seem to admit that they would not be entitled to injunctive relief for any constitutional violations because only the detainees could have standing to assert those rights.  *See* Dkt. 34 at 14 ("Defendants are routinely violating detainees' constitutional rights; and both detainees' and attorneys' rights under the Federal and Texas Wiretap Acts.").  Because the Plaintiffs lack standing (discussed in more detail below), and because they have alleged no other cognizable claims against Defendants, they are not entitled to declaratory or injunctive relief.

**D.      Plaintiffs' Claims Should Also Be Dismissed for Lack of Standing**

In the response, Plaintiffs argue that the Austin Lawyers Guild ("ALG") and the Prison Justice League ("PJL") have organizational standing to assert claims on behalf of their members, and that the ALG members have third-party standing.  Dkt. 34 at 16-21.  Notably, the individual Plaintiffs do not argue that they have standing vis-à-vis each of the Defendants; rather, they merely assert that they are proper representatives of a proposed class of attorneys because their claims are allegedly typical of other class members under Fed. R. Civ. P. 23.  *Id.* at 15-16.

First, whether the individual Plaintiffs are appropriate class representatives under Rule 23 has no bearing on their standing:

> Inclusion of class allegations in a complaint does not relieve a plaintiff of himself meeting the requirements for constitutional standing, even if the persons described in the class definition would have standing themselves to sue.  If the plaintiff has no standing individually, no case or controversy arises.

*Brown v. Sibley*, 650 F.2d 760, 771 (5th Cir. Unit A July 1981); *see also Martin v. BMS Enterprises, Inc.*, 2010 U.S. Dist. LEXIS 66050 at *6 (N.D. Tex. July 1, 2010) ("To demonstrate that they have standing, named plaintiffs in a class action suit must meet every element of standing as to each defendant, including alleging that they were injured by each defendant named in the suit.").  In addition, Plaintiffs simply ignore the *Evans* case cited by Defendants which is factually right on point.  There, the Nevada District Court held that the plaintiff attorney lacked standing to assert constitutional claims predicated on a violation of the attorney-client privilege.  *See Evans, et*

9

*al. v. Inmate Calling Solutions, et al.*, 2011 U.S. Dist. LEXIS 152972 at *30-31 (D. Nev. July 29, 2011).  Without standing, it is irrelevant whether the individual Plaintiffs are appropriate class representatives.

Second, Plaintiffs' arguments concerning organizational standing are legally conclusory and, therefore, cannot survive dismissal.  Plaintiffs merely allege that "ALG member attorneys have standing to seek injunctive relief" and "PJL's detainee members have standing to seek relief."  Dkt. 34 at 17.  But neither of these allegations is supported by any facts.  Only well-pleaded factual allegations are entitled to a presumption of truth.  *See Ashcroft*, 129 S.Ct. at 1950.

Third, the individual Plaintiffs and the ALG also lack third–party standing under the three criteria discussed in the Supreme Court's decision in *Kowalski v. Tesmer*.  Plaintiffs attempt to distinguish *Kowalski* as non-binding dictum and by relying on the dissenting opinion to suggest that the majority gave the issues "less-than-full consideration."  Dkt. 34 at 20-22 & n.14.  To the contrary, the majority decision in *Kowalski* is clear, on point, and binding on this Court.

After noting that the Court has "not looked favorably upon third-party standing," the Supreme Court held that the plaintiff attorneys lacked the second requirement – a close attorney client relationship – because they had no relationship at all with future, unnamed prospective clients.  *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004).  Here, instead of alleging specific facts demonstrating an existing attorney client relationship, Plaintiffs failed to identify any detainee clients, preferring instead to simply characterize *Kowalski* as obiter dictum.  As noted in the Renewed Motion to Dismiss, Plaintiffs' own Complaint reveals that they have no relationship, much less a close relationship, with future, unnamed detainees.  *See* Dkt. 25, ¶ 3 (referring to 966 criminal defense attorneys in Austin "[v]irtually all [of whom] are in the same position" and "10,896 other attorneys in Austin, many [of whom] will ultimately represent one or more pretrial detainees in a criminal defense matter.").

Furthermore, Plaintiffs' discussion of the third requirement—that detainees face obstacles in asserting claims on their own behalf—is entirely misplaced.  Plaintiffs argue that detainees need quick phone access to attorneys after they have been arrested, absent which they are in danger of "imperiling their immigration status, spending extra time in jail waiting for bond, or losing the opportunity to collect a blood sample as evidence."  *See* Dkt. at 19-20, 22-23.  Not only are these supposed dangers pure speculation,[4] this is not the proper inquiry for third-party standing.  This case does not present claims about immigration issues and blood samples.  Plaintiffs have accused Defendants of violating the U.S. Constitution and the Federal and Texas Wiretap Acts by recording phone calls from their alleged clients, and for third-party standing, they must demonstrate why their clients are incapable of bringing these claims on their own behalf.  Plaintiffs have failed to satisfy this requirement; therefore, they lack third-party standing to assert the claims in this case.

**E.**     **Plaintiffs Have Failed to Show That Securus Was Acting Under Color of State Law**

Plaintiffs argue that Securus should be held liable for the alleged constitutional violations because "it is working in concert with the government defendants."  Dkt. 34 at 23.  However, Plaintiffs have alleged nothing more than the existence of a contract between Securus and Travis County, and that Securus is performing its obligations under that contract.  *See id.* at 24 ("Plaintiffs assert that Securus is acting jointly with the government by intercepting and recording calls, storing them in a database for six months, and making them available to county police and prosecutors 24 hours a day.").

The U.S. Supreme Court has clearly instructed that *even total engagement* in performing a public contract does not transform the acts of private contractors into acts of the government for purposes of Section 1983 liability.  *Rendell-Baker v. Kohn*, 457 U.S. 830, 841 (1982).  The Fifth

---

[4] "Something more than a hypothetical hindrance is required" to satisfy the third element for third-party standing.  *See Pharmacy Buying Assoc., Inc.*, 906 F. Supp.2d at 616 (citing *Miller v. Albright*, 523 U.S. 420, 448 1998)).

Circuit and numerous other courts in this Circuit have consistently adhered to this principle.  *See*

Dkt. 29 at 8-9.

Moreover, in yet another virtually identical case, the Nevada District Court in *Evans v. Skolnick* concluded that a private contractor operating a telephone system for a prison facility was not acting under color of state law.  There, the plaintiff alleged "that prison officials and private party defendants deprived him of his Fourth and Fourteenth Amendment rights when they intercepted and eavesdropped on his attorney-client telephone calls."  Dkt. 29-1 at 6.  Thus, the issue before the Court was "whether defendants' alleged actions of maintaining and operating the NSP telephone system may be fairly attributable to the state."  *Id.*  Plaintiffs make the same allegations in this case, and the same issue is now before this Court.  Despite Plaintiffs' attempt to distinguish the *Evans* case (which they cannot do), this Court should reach the same conclusion.

Finally, Plaintiffs' conclusory assertion that Securus is engaged in joint activity with the Travis County Defendants does not preclude dismissal of their claims.  The Fifth Circuit has held that such allegations of joint action or conspiracy must be substantiated by specific facts including (1) an agreement between the private and public defendants to commit an illegal act, and (2) a deprivation of constitutional rights.  *See Priester v. Lowndes County*, 354 F.3d 414, 420 (5th Cir. 2004).  "Allegations that are merely conclusory, without reference to specific facts, will not suffice." *Id.* (citation omitted); *see also Allard v. Quinlan Pest Control Co., Inc.*, 2011 U.S. Dist. LEXIS 125865 at *13 (N.D. Tex. Sept. 14, 2011) ("[A] mere conclusory allegation of a conspiracy to commit an illegal act between a private actor defendant and the state, will not survive dismissal.")

Here, even assuming Plaintiffs have alleged a deprivation of their constitutional rights, they have not alleged any facts to support an allegation that Securus and the Travis County Defendants agreed to commit an illegal act.  Securus' engagement and performance of its

contract with Travis County is not conduct "fairly attributable to the state" under the joint action test or any other theory of liability under Section 1983.  Accordingly, Plaintiffs' claims against Securus should be dismissed.

## CONCLUSION

For all of the foregoing reasons, Defendant Securus Technologies, Inc. prays that the Court grant its Renewed Motion to Dismiss, that Plaintiffs take nothing by his suit, and that Securus recovers all such other and further relief, special or general, at law or in equity, to which they are justly entitled, including but not limited to costs incurred herein.

Respectfully submitted,

By:   /s/ Robert A. Hawkins
      S. Cass Weiland
      Texas Bar No. 21081300
      Robert A. Hawkins
      Texas Bar No. 00796726
      SQUIRE PATTON BOGGS LLP
      2000 McKinney Ave, Suite 1700
      Dallas, Texas 75201
      Ph:    (214) 578-1500
      Fax:   (214) 578-1550
      Email: cass.weiland@squirepb.com
      robert.hawkins@squirepb.com

      Andrew M. Jones
      Texas Bar No. 00792609
      Securus Technologies, Inc.
      14651 Dallas Pkwy, 6th Floor
      Dallas, Texas 75254
      Ph:    (972) 277-0313
      Email: andrewjones@securustech.net

      ATTORNEYS FOR DEFENDANT
      SECURUS TECHNOLOGIES, INC.

029240.0129\4827-4638-0318.2.

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that the foregoing has been filed and served on the 26th day of September, 2014, by using the CM/ECF electronic filing system.

<u>/s/ Robert A. Hawkins</u>
Robert A. Hawkins

029240.0129\4827-4638-0318.2.

not interfere with operations or present any safety concerns. Contractor shall not reduce the number of telephone sets available for inmates. Contractor shall provide portable telephone sets for non-ambulatory inmates confined at the Infirmary Unit in the Health Service Building at Del Valle. When the new building 12 at Del Valle is completed, Contractor shall provide telephone sets for inmates to be confined there.

   5.2   Training on Inmate Telephone System   At least once every six (6) months, Contractor shall provide a four (4) hour training session for ITS and Sheriff's staff that addresses how to use the system, advances and upgrades to its technology, and any other matters that have created issues in the effective use of the Equipment in County facilities. Contractor shall provide County with SCP User Manuals as needed and each time that these manuals are updated.

   5.3   Call Blocking Capacity   In addition to the call blocking capacity described in Attachment G, Contractor shall provide call blocking capabilities that limit calls by dollar amount, date, time or any combination of these on request. Contractor shall implement call blocking on the basis requested at the request of the Sheriff or any recipient of inmate calls.

   5.5   Records of Inmate Calls   Contractor shall provide inmate call recording and tracking as described in Attachment G. Among its capabilities, this recording and tracking allows the Sheriff to obtain a report of all calls from inmate phones to a specific destination and then obtain a recording of the contents of those calls if needed. Contractor shall record at its own expense all inmate telephone calls, except those to numbers labeled as "Private" by the SCP system based on instructions by County. Contractor shall provide a storage method for the contents of inmate calls for calls made within the previous six (6) months that allows County staff to search the data and retrieve the contents immediately. Contractor shall store all data related to inmate calls, including the full recording of the conversation, for at least six (6) months on the hard drive of the computer system and at least six (6) additional months on another media like tapes or discs.

6.0   EQUIPMENT UPGRADES

   6.1   Tiburon Interface   Contractor shall provide an identification system for each inmate caller that is fully automated and does not create any additional duties or workload for Sheriff's staff. Contractor shall maintain its existing interface between the County booking system which is based on Tiburon technology and the Equipment which is based on Contractor technology when the new version of the Tiburon software is rolled out so that the automatic assignment of PIN/PAN by the Equipment at the time of booking is maintained.

   6.2   Equipment Enhancements   In paragraph 6.2 and 6.3 "Enhancements" includes the upgrade of the existing CAM calling platform to the Secure Call Platform (SCP) described in Attachment G, and the provision of the following applications the basic Electronic Dragnet, the JOB FINDER™ application including hardware and software, the E-mail application including hardware and software, and the implementation of Voice mail within SCP. Contractor shall

**EXHIBIT B**